```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA        *     Case No. 12-CR-521(CBA)
                                *
                                *     Brooklyn, New York
                                *     May 13, 2013
      v.                        *
                                *
DEVON DANIELS,                  *
                                *
              Defendant.        *
                                *
*  *  *  *  *  *  *  *  *  *  *  *  *  *

             TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
             BEFORE THE HONORABLE RAMON E. REYES, JR.
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:             TIANA A. DEMAS, ESQ.
                                TYLER J. SMITH, ESQ.
                                Asst. United States Attorney
                                United States Attorney's Office
                                271 Cadman Plaza East
                                Brooklyn, NY 11201


For the Defendant:              MARTIN J. SIEGEL, ESQ.
                                PAUL MARKS, ESQ.
                                Law Office of Martin J. Siegel
                                111 John Street, Suite 800
                                New York, NY  10038




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1        (Proceedings commenced at 12:39 p.m.)

2            THE CLERK:  The Honorable Ramon E. Reyes, Jr.

3    presiding.  Criminal cause for a plea, docket number 2012-CR-

4    521, U.S.A. versus Daniels.  Counsel for the government,

5    please state your name for the record.

6            MS. DEMAS:  Good afternoon, Your Honor.  Tiana

7    Demas and Tyler Smith for the government.

8            MR. SMITH:  Good afternoon, Judge.

9            THE CLERK:  Counsel for the defendant?

10           MR. SIEGEL:  Paul Marks and Martin Siegel,

11   appearing for the accused.  Good afternoon.

12           MR. MARK:  Good afternoon.

13           THE COURT:  Good afternoon.  Please be seated.  Mr.

14   Daniels, I'm advised by your attorney that you wish to plead

15   guilty to several of the counts in the indictment that's been

16   filed against you.  Is that correct?

17           THE DEFENDANT:  Yes.

18           THE COURT:  This is a serious decision and I'll

19   have to make sure that you understand all of your rights and

20   also that you understand the consequences of your guilty

21   plea.  To do that, I'll have to ask you some questions and

22   your answers to my questions must be made under oath, so if

23   you stand up and raise your right hand, I'll swear you in.

24       (The defendant is sworn.)

25           THE COURT:  Okay.  Please be seated.  Mr. Daniels,

3

1    do you understand that having been sworn, your answers to my

2    questions will be subject to the penalties of perjury or of

3    making a false statement if you do not answer truthfully?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  That means that if you answer falsely

6    to any of my questions, the government can prosecute you for

7    perjury or making a false statement and can use any of your

8    false statements today during that prosecution.  Do you

9    understand?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  I want you to understand that this is

12    Judge Amon's case.  She is the judge who will sentence you

13    and make the ultimate decision as to whether to accept your

14    guilty plea.  If you wish, you have the absolute right to

15    plead guilty in front of her and there will be no prejudice

16    to you.

17          Alternatively if you wish, I will listen to your

18    plea.  A transcript of this proceeding will be made by the

19    court reporter and Judge Amon will then review the transcript

20    in connection with rendering your sentence.  Do you

21    understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you wish to give up your right to

24    plead guilty directly in front of Judge Amon and instead

25    plead guilty in front of me?

4

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  Are you making this decision

3     voluntarily and of your own free will?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Has anyone threatened you, or have any

6     promises been made to you to induce you to plead guilty in

7     front of me as opposed to pleading guilty in front of Judge

8     Amon?

9           THE DEFENDANT:  No, Your Honor.

10          THE COURT:  In connection with that, I've been

11    given a consent form that will allow me to hear your plea.

12    There are a number of signatures on it.  I'm holding it up.

13    One of the signatures is next to a yellow arrow.  Is that

14    yours?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Mr. Daniels, as I said prior, before

17    hearing your plea, there are a number of questions that I

18    have to ask you to make sure that your plea is valid.  If you

19    don't understand any of my questions or if you don't

20    understand anything that I'm telling you today, please let me

21    know and I'll re-word it so that you can understand.  Do you

22    understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  What's your full name?

25          THE DEFENDANT:  Devon Steven Shondel Daniels.

5

1          THE COURT:  How old are you?

2          THE DEFENDANT:  31.

3          THE COURT:  What schooling or education have you

4     had?

5          THE DEFENDANT:  College.

6          THE COURT:  Did you graduate?

7          THE DEFENDANT:  I have an Associates Degree.

8          THE COURT:  Okay.  Are you under the care of a

9     doctor or psychiatrist for any reason?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  In the past 24 hours, have you taken

12    any narcotic drugs, medicines or pills, or have you drunk any

13    alcoholic beverages?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  Have you ever been hospitalized or

16    treated for narcotic addiction, alcoholism or mental or

17    emotional problems?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Is your mind clear right now?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Do you understand what's going on?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Mr. Daniels, as a defendant in a

24    criminal case, you have the right to be represented by an

25    attorney at every stage of the proceedings.  Mr. Siegel, who

6

1    is seated to your left, is your attorney who has been

2    appointed by the Court to represent you.  If you wish to

3    confer with him about anything that's going on today, please

4    let me know and we'll give you time to talk to him.  Do you

5    understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Have you had any difficulty

8    communicating with Mr. Siegel concerning your case?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  Have you had enough time to talk to him

11   about your case and the decision to enter a guilty plea?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Are you satisfied with the

14   representation and the advice that he has provided to you?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Siegel, have you had any difficulty

17   discussing these matters with Mr. Daniels?

18             MR. SIEGEL:  I have not, Your Honor.

19             THE COURT:  Are you satisfied that he understands

20   the rights that he's giving up by pleading guilty?

21             MR. SIEGEL:  Yes, Your Honor.

22             THE COURT:  Is he capable of understanding the

23   nature of these proceedings?

24             MR. SIEGEL:  Yes, Your Honor.

25             THE COURT:  Do you have any doubt at all about his

1    competence to plead guilty at this time?

2              MR. SIEGEL:  No, Your Honor.

3              THE COURT:  I take it you've discussed with him the

4    maximum and minimum sentences and fines that can be imposed

5    upon him if he pleads guilty?

6              MR. SIEGEL:  I have, Your Honor.

7              THE COURT:  Did you talk to him about the

8    sentencing guidelines, how they're calculated and how they

9    affect his case?

10              MR. SIEGEL:  I have, Your Honor.

11              THE COURT:  Okay.  Mr. Daniels, you've been charged

12    in an indictment with a number of counts related to

13    unauthorized computer access and false statements.  Have you

14    seen a copy of the indictment?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  Have you consulted with Mr. Siegel

17    concerning the charges?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  Do you understand the charges pending

20    against you?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  All right.  I understand that today

23    you'll be pleading guilty to Counts 1, 2 and 4 which charge

24    you with unauthorized computer access and exceeding the

25    authorized computer access that you had -- so that's 1, 2 and

8

1      4 related to incidents on April 17th, 2011, April 9th, 2011

2      and June 4th and 5th, 2010.

3              THE COURT:  In order to convict you of those

4      counts, the government would have to prove beyond a

5      reasonable doubt the following elements.  First, that you

6      accessed a computer with authorization, but exceeded the

7      authority in accessing the information in question.  Second,

8      that you acted intentionally and third, that you obtained

9      information from a department or agency of the United States.

10     Do you understand the elements of the crime to which you'll

11     plead guilty?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  What I want to do now is go over the

14     rights that you have and the rights that you'll be giving up

15     if you plead guilty.  First of all, you have the right to

16     plead not guilty.  Do you understand that?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  If you did plead guilty -- excuse me.

19     What that means is that even if you are guilty, you have a

20     choice in this matter and it's up to you and you alone to

21     decide what to do.  You may withdraw your previously entered

22     plea of not guilty and enter a plea of guilty as you

23     apparently wish to do, or you may choose to go to trial

24     simply by persisting in your not guilty plea.  Do you

25     understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  If you did plead not guilty, you would

3    have a right under the Constitution and laws of the United

4    States to a speedy and public trial before a jury.  At trial,

5    you would be represented by an attorney.  Do you understand

6    that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  At trial, you would be presumed to be

9    innocent.  That means that you wouldn't have to prove that

10   you're innocent.  Under our legal system, it's the

11   government's burden to prove beyond a reasonable doubt that a

12   defendant is guilty of the crimes charged.  And if you had a

13   trial and the government would fail to meet that burden of

14   proof, the jury would have to find you not guilty.  Do you

15   understand?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  That's why sometimes jurors return

18   verdicts of not guilty, even though they believe the

19   defendant on trial probably committed the crime charged.

20   When a jury returns a not guilty verdict, it's not saying

21   that it believes a defendant's innocent.  It's only saying

22   that it's not convinced beyond a reasonable doubt that he is

23   guilty.  Do you understand the difference between those two

24   things?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  During trial, witnesses for the

2     government would have to come into court.  They would have to

3     testify under oath in your presence.  Mr. Siegel would have

4     the right to cross-examine each witness.  He could object to

5     evidence offered by the government, and he could offer

6     evidence on your behalf.  He would also have the right to

7     subpoena or compel witnesses to come and to testify on your

8     case.  Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  At trial, you would have the right to

11     testify if you wanted to.  On the other hand, you couldn't be

12     forced to testify if you didn't want to.  Under the

13     Constitution and laws of the United States, no one can be

14     forced to testify against himself and if you had a trial and

15     didn't testify, Judge Amon would tell the jury that they

16     could not hold that against you.  Do you understand?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  If instead of going to trial, you plead

19     guilty to the crimes charged and if Judge Amon accepts that

20     guilty plea, you'll be giving up your Constitutional right to

21     a trial and all the other rights I've just discussed.  There

22     will be no trial in this case.  The Court will simply enter

23     judgment of guilty based upon your plea.  Do you understand?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  If you do plead guilty, I'll have to

1    ask you questions about what you did in order to satisfy

2    myself and Judge Amon that you are guilty of the crimes

3    charged.  You'll have to answer my questions and acknowledge

4    your guilt, and by doing that, you'll be giving up your right

5    not to testify against yourself.  Do you understand?

6                THE DEFENDANT:  Yes, Your Honor.

7                THE COURT:  Also if you enter a guilty plea today

8    and you admit the criminal conduct that's alleged in the

9    indictment and if Judge Amon accepts that guilty plea, you'll

10   be giving up your right to appeal to a higher court on

11   whether you committed the crime or not.  That will be over by

12   your plea.  Do you understand?

13               THE DEFENDANT:  Yes, Your Honor.

14               THE COURT:  Are you willing to give up your right

15   to a trial and all the other rights I've just discussed?

16               THE DEFENDANT:  Yes, Your Honor.

17               THE COURT:  I understand that you've entered into a

18   plea agreement with the government.  We've marked it as Court

19   Exhibit 1.  You can have a look.  On the last page, there are

20   a number of signatures, again, one of which is next to a

21   yellow arrow.  Is that your signature?

22               THE DEFENDANT:  Yes, Your Honor.

23               THE COURT:  Mr. Daniels, did you read this plea

24   agreement carefully before you signed it?

25               THE DEFENDANT:  Yes, I did, Your Honor.

12

1        THE COURT:  And do you understand what's contained

2    in it?

3        THE DEFENDANT:  Yes, Your Honor.

4        THE COURT:  Ms. Demas, does the plea agreement

5    that's been marked as Court Exhibit 1 contain the entirety of

6    any understanding the U.S. Attorneys Office has with Mr.

7    Daniels concerning these charges?

8        MS. DEMAS:  Yes, it does, Your Honor.

9        THE COURT:  Is that your understanding as well, Mr.

10   Siegel?

11       MR. SIEGEL:  Yes, Your Honor.

12       THE COURT:  Okay.  Before signing this plea

13   agreement, Mr. Daniels, did you talk to Mr. Siegel about it?

14       THE DEFENDANT:  Yes, I did, Your Honor.

15       THE COURT:  And review it with him?

16       THE DEFENDANT:  Yes, I did.  Yes.

17       THE COURT:  Okay.  Is there anything in this plea

18   agreement that's not clear to you that you need explained in

19   any further detail now?

20       THE DEFENDANT:  No, Your Honor.

21       THE COURT:  Other than the promises that are

22   contained in this plea agreement, has anyone made any other

23   promises to you that have caused you to plead guilty?

24       THE DEFENDANT:  No, Your Honor.

25       THE COURT:  I want to do now is carefully go over

13

1    what the penalties are for the crimes to which you may plead

2    guilty.

3            MR. SIEGEL:  But Your Honor, before we move to that

4    stage, my signature appears on that agreement and it's listed

5    under agreed and just so the record's clear, what we are

6    agreeing to is I've reviewed the agreement with my client,

7    Mr. Daniels, and I've gone over the contents of that

8    agreement.

9            THE COURT:  As it says, "I have read the entire

10   agreement and discussed it with my attorney.  I understand

11   all of the terms and am entering into it knowingly and

12   voluntarily."  Both you and Mr. Daniels signed this, so your

13   signature means you reviewed it with him and talked to him

14   about it.

15           MR. SIEGEL:  Yes, Your Honor.

16           THE COURT:  Okay.  Great.  Okay.  Mr. Daniels, you

17   are going to be pleading guilty to three counts of exceeding

18   your authority to access a computer in violation of 18 United

19   States United Code Section 1030.

20           Those counts carry a maximum term of imprisonment

21   of one year, a minimum term of imprisonment of zero years.  A

22   maximum term of supervised release of one year, $5,000

23   maximum fine, no restitution and a $100 special assessment.

24   Now the sentence -- sentences, I should say, imposed on each

25   of the three counts can run consecutive.  Do you understand

1    that?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  Supervised release, which I mentioned,

4    is a term of time after you get out of prison where you have

5    to live by certain terms and conditions and if you violate

6    them, you can be imprisoned for up to one year without credit

7    for time you already spent in prison or time you spent on

8    post-release supervision.  Do you understand?

9         THE DEFENDANT:  Yes, Your Honor.

10        THE COURT:  Now I'm going to take a minute to

11   discuss the sentencing analysis that Judge Amon will go

12   through in determining what sentence to give you.  As a first

13   step, she has to consider the sentencing guidelines issued by

14   the United States Sentencing Commission and judges look to

15   those guidelines to determine what a reasonable sentence is

16   in a criminal case.

17        These guidelines are only advisory.  They are not

18   mandatory.  But they are an important consideration in

19   sentencing and Judge Amon will take them into account as one

20   factor in determining what sentence to give you.  Do you

21   understand?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  You discussed the sentencing guidelines

24   with Mr. Siegel?  How they're calculated and how they affect

25   your case?

1          THE DEFENDANT:  Yes, I did, Your Honor.

2          MR. SIEGEL:  And Your Honor, I think the record

3     should indicate that we do not agree with the government's

4     calculation of the guidelines.

5          THE COURT:  Okay.  We'll get to the specific

6     guideline calculation that's contained in the plea agreement

7     in a moment.

8          The second step is for Judge Amon in her sentencing

9     analysis is to determine whether there are any factors

10    present that would allow her to depart from the advisory

11    sentencing guidelines, either upwardly or downwardly.

12         The third step is for her to consider the factors

13    set forth in the sentencing statute, 18 United States Code

14    Section 3553(a) against all the facts and circumstances of

15    your case, and it may be that what's called a non-guideline

16    sentence may be appropriate.

17         The bottom line for you is that until your

18    sentencing date, you can't know with any certainty what the

19    guidelines are, whether there will be grounds to depart from

20    them or whether Judge Amon will impose a non-guideline

21    sentence.  Do you understand?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Now your sentencing hearing has been

24    set for August 30th at 9:30.  Prior to that date, Judge Amon

25    will get a pre-sentence report from the Probation Department

1    which will recommend a sentencing guideline range.  Your

2    attorney will have an opportunity to read the pre-sentence

3    report and to challenge the facts contained in it as reported

4    by the Probation Department.  Do you understand?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Judge Amon has informed us that the

7    pre-sentence report is to be disclosed by August 2nd, that

8    the defendant's sentencing submissions are due August 16th

9    and the government's response August 23rd.

10           Although as I said earlier there's uncertainty at

11    this point in time what the sentencing guidelines are or

12    whether they'll be grounds to depart from them or whether

13    Judge Amon will impose a non-guidelines sentence, it's

14    important for you to know what possible guideline ranges are

15    as you sit here today, and this is based on the facts that

16    are available to us and this is the government's estimate as

17    contained in the plea agreement to which you did not agree.

18           This guideline calculation that's contained in the

19    plea agreement is not binding on Judge Amon, it's not binding

20    on the government and it's not binding on the Probation

21    Department.  And that if this estimate is wrong, it won't be

22    the basis for you to withdraw your guilty plea.  Do you

23    understand?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  Okay.  Now it's a fairly complicated

1    analysis because you're pleading guilty to three different

2    counts.

3              But according to the government, if you take into

4    account all of the three separate counts, the additions to

5    the base offense level for public dissemination of personal

6    information, abuse of a police computer system and abuse of a

7    position of trust or use of a special skill and then group

8    all of the counts together and do the proper calculation, you

9    are looking at a final adjusted offense level of 17 and if

10   you're in criminal history category 1, that leads to a term

11   of imprisonment of 24 to 30 months.  Do you understand that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  You have agreed in this plea agreement

14   that if Judge Amon sentences you to 30 months or less, you

15   will not appeal or otherwise challenge your conviction or

16   your sentence.  Do you understand that?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  You have also agreed in this plea

19   agreement that you will resign your position with The New

20   York City Police Department, execute all necessary paperwork

21   to effect such resignation by today and not apply for future

22   employment with The New York City Police Department or any

23   other law enforcement agency.  Do you understand that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Okay.  In exchange for your plea to the

1   other three counts and the other actions that are

2   contemplated under the plea agreement, the government will

3   agree that no further criminal charges will be brought

4   against you for providing false statements to the Drug

5   Enforcement Administration on May 15th or for accessing a

6   computer without authorization or exceeding your authorized

7   access for the June 4th, April 17 -- June 4th, 2010 and the

8   April 17th, 2011 accesses.

9           Do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Okay.  Mr. Siegel, I understand that

12   you disagree with the sentencing guideline analysis

13   that's -- or calculation, I should say, that's contained in

14   the plea agreement.  Have you independently come up with what

15   you believe to be a correct guideline calculation?

16          MR. SIEGEL:  Your Honor, at this point, no.

17          THE COURT:  Okay.  Ms. Demas, is there anything

18   that you want to draw to Mr. Daniels' attention concerning

19   the plea agreement that I haven't already?

20          MS. DEMAS:  No, Your Honor.

21          THE COURT:  Okay.

22          MS. DEMAS:  Not beyond the allocution.

23          THE COURT:  Okay.

24          MS. DEMAS:  Besides the agreement itself.

25          THE COURT:  After that.

1          MR. SIEGEL:  Your Honor, just one other point.

2     It's my understanding at time of sentencing all of the

3     other -- all of the open counts will be dismissed by the

4     government.

5          THE COURT:  Is that correct?

6          MS. DEMAS:  That's correct.

7          THE COURT:  All right.  The last thing, Mr.

8     Daniels, that I want to mention about guideline -- our

9     sentencing in the federal system is that there's no parole

10    board, there's no parole commission so that means whatever

11    term of imprisonment you get from Judge Amon will be very

12    close to the actual amount of time you spend in prison.  You

13    won't be able to write to a parole commission or parole board

14    to let you out early because there is no such thing in our

15    federal system.  Do you understand?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Okay.  Do you have any questions at

18    this point that you want to ask me about the charges, about

19    your rights, about the plea agreement, the consequences of

20    your guilty plea, anything else that's not clear to you right

21    now?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Okay.  Are you ready to plead?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Mr. Siegel, do you know of any reason

1    why Mr. Daniels should not enter a guilty plea to three

2    counts?

3              MR. SIEGEL:  I do not, Your Honor.

4              THE COURT:  Are you aware of any legal defense to

5    the charges?

6              MR. SIEGEL:  No, Your Honor.

7              THE COURT:  Okay.  Mr. Daniels, how do you plead to

8    Count 1 of the indictment?  Guilty or not guilty?

9              THE DEFENDANT:  Guilty, Your Honor.

10             THE COURT:  How do you plead to Count 2 of the

11   indictment?  Guilty or not guilty?

12             THE DEFENDANT:  Guilty, Your Honor.

13             THE COURT:  How do you plead to Count 4 of the

14   indictment?  Guilty or not guilty?

15             THE DEFENDANT:  Guilty, Your Honor.

16             THE COURT:  Mr. Daniels, are you making these

17   guilty pleas voluntarily and of your own free will?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Has anyone threatened, forced or

20   pressured you to plead guilty?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  Other than the promises contained in

23   the plea agreement, has anyone made any promises to you that

24   have caused you to plead guilty?

25             THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Has anyone promised you what sentence

2     you'll receive from Judge Amon if you plead guilty?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Okay.  Why don't you tell me in your

5     own words why you are guilty of Counts 1, 2 and 4 of the

6     indictment?  You need to tell me, 'cause I need to be

7     satisfied that you are guilty.  You need to admit the conduct

8     that you engaged in as alleged by the government.  So tell me

9     about it.

10          THE DEFENDANT:  For those two, I accessed a

11     computer was used for personal use and not business use.

12          THE COURT:  Do you remember the dates on which you

13     accessed the computer systems for person use?

14          THE DEFENDANT:  I have in front of me -- I have it

15     in front of me, Your Honor.  April 17th, 2011, April 9th,

16     2011, November -- no.  Sorry.

17          THE COURT:  And June 5th?

18          THE DEFENDANT:  Yes.  And June 5th, 2010.

19          THE COURT:  Okay.  Now you had authority to use

20     these computers as a New York City Police Officer, correct?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  But you on these three dates --

23          MS. DEMAS:  Your Honor, may I just interject for a

24     second --

25          THE COURT:  Yes.

22

```
1              MS. DEMAS:  -- on the last count, Count 4, is
2     actually June 4th and June 5th, 2010.
3              THE COURT:  But I thought in the --
4              MS. DEMAS:  Oh, excuse me.
5              THE COURT:  -- in the plea agreement --
6              MS. DEMAS:  You're right.
7              THE COURT:  -- that --
8              MS. DEMAS:  Sorry.
9              THE COURT:  Okay.  So you had authority to use
10    these computer systems for your business as a New York City
11    Police Officer?
12             THE DEFENDANT:  Yes, Your Honor.
13             THE COURT:  But on these days in question, you were
14    not using it for your business.  You were using it for
15    personal use?
16             THE DEFENDANT:  Yes, Your Honor.
17             THE COURT:  Were your actions on these dates
18    intentional, or was it a mistake?
19             THE DEFENDANT:  Intentional, Your Honor.
20             THE COURT:  And what were these computer systems?
21    What systems did you access?
22             THE DEFENDANT:  I believe it was a system that
23    allows you to check the license plates of vehicles.
24             THE COURT:  Do you know who controlled those
25    computer systems?  Was it a New York City internal system?
```

1    Was it some other system?

2            THE DEFENDANT:  You mean -- I thought it was a New

3    York City internal system, but later on I found out that it's

4    a federal system also.

5            THE COURT:  Where were you when you accessed these

6    computer system?

7            THE DEFENDANT:  I believe I was at work, Your

8    Honor.

9            THE COURT:  Where was your precinct?

10           THE DEFENDANT:  111th Precinct in Queens, New York.

11           THE COURT:  Ms. Demas, do you think the

12   allocution's sufficient?

13           MS. DEMAS:  Your Honor, I'd like the defendant to

14   stipulate that he accessed a federal database as part of

15   these searches.  I know he said he later found out it was a

16   federal database.

17           THE COURT:  Is it -- I assume the government would

18   be able to prove at trial that it was a federal database that

19   was accessed.

20           MS. DEMAS:  Yes.  The NCIC database.

21           THE COURT:  Is knowledge of the federal nature of

22   the database on behalf of the defendant a necessary element

23   of the crime?

24           MS. DEMAS:  No.  My concern was just that he has

25   said -- it actually isn't so I think the allocution is

1    sufficient.  The only other issue would be it was for Count 4

2    -- I'm sorry -- June 4th and 5th, 2010 even in the plea

3    agreement.  It's just that it was charged as one count, but

4    it was accessed over the course of two days and I just would

5    like the defendant to be clear that he said it was license

6    plate searched, but I would also like him to allocute to the

7    fact that he searched for warrants on individuals which were

8    part of the charges as well.

9         MR. SIEGEL:  Well, I think it just talks about

10   accessing the computer so I think that's the violation --

11   that he knowingly and intentionally accessed through a

12   computer to obtain certain information and that really is

13   what's contained in the four corners of Count 4.  That's what

14   he's acknowledging.  That's what he's pleading to.

15        MS. DEMAS:  Well, I just don't want there to be any

16   argument on the defendant's part that he's only allocuted to

17   some of them.  That charge is actually a warrant search, not

18   a license search.

19        THE COURT:  Count 4?

20        MS. DEMAS:  Count 4.  And he certainly has

21   knowledge of the searches he ran.

22        MR. SIEGEL:  I would think --

23        THE COURT:  Let's -- let me go back.  With respect

24   to Count 4, Mr. Daniels, which concerns access on June 4th

25   and June 5th, 2010, do you remember that?  Those dates,

1      accessing the computer?

2                  THE DEFENDANT:  Yes, Your Honor.

3                  THE COURT:  Okay.  And you did, in fact, use the --

4      exceed your authority to use the computers on those dates?

5                  THE DEFENDANT:  Yes, Your Honor.

6                  THE COURT:  Do you remember what it is you were

7      trying to access on those dates?

8                  THE DEFENDANT:  I have to double-check, Your Honor.

9                  MR. SIEGEL:  Your Honor, I think he's pleading

10     guilty to Count 4 where it just mentions that he knowingly

11     and intentionally accessed a computer without authorization

12     and exceeded authorized access to a computer and did thereby

13     obtain information from the FBI, a department and agency of

14     the United States.

15                 THE COURT:  Let me ask Ms. Demas a question.  The

16     license plates?  What database is that?

17                 MS. DEMAS:  They all go to NCIC.  But my concern

18     was just that he said only license plate searches as part of

19     his allocution when, in fact, two of the charges were

20     searches for license plate, two of the charges were searches

21     for warrants.  They both hit NCIC.  I'm just concerned about

22     him not saying anything about warrants as part of his

23     allocution.

24                 THE COURT:  So your point is the Count 1,

25     April 17th and Count 2, April 9th, both of 2011?  Those were

1      the license plates?

2              MS. DEMAS:  Exactly.

3              THE COURT:  And Count 4, June 4th and 5th, that was

4      the warrant database?

5              MS. DEMAS:  Yes.  I mean --

6              THE COURT:  Well, both parts of NC --

7              MS. DEMAS:  All hit NCIC.  Correct.

8              THE COURT:  NCIC, right?  So the allocution only to

9      license plates means that he's not admitting the June --

10     actually admitting the June 4th and 5th?

11             MS. DEMAS:  That's my concern.

12             THE COURT:  Do you see -- do you see the point

13     that --

14             MR. SIEGEL:  Your Honor, if you look within the

15     four corners of Count 4, the violation which he's pleading

16     guilty to is just that he exceeded his authority by accessing

17     a particular database.  Whether -- and I think under the

18     terms of the statute and of the Count 4, he could be

19     accessing that database for numerous possibilities, but your

20     qualm is the actual accessing that -- the database not for

21     official purposes and I think that's a requirement.  Whatever

22     he was accessing before is not really the issue.  It's really

23     that he was really going over his authority for what he was

24     accessing.

25             I mean, if he was accessing it as part of his

1    police duties, that's one thing.  But just for personal

2    reasons that were outside of the concords of his employment,

3    I think he's acknowledged that's what he did.  So it has

4    nothing to do with his official business but just part of a

5    personal nature.

6               THE COURT:  Two thoughts come to mind.  Number one,

7    it's still -- yes.  I understand Ms. Demas's point.  On

8    June 4th -- if she's correct, June 4th and 5th there were --

9    the license plates were not -- part of the database wasn't

10   accessed.  So he's not admitting to actually Count 4.

11              On the other hand, if it's not important, what's

12   the big deal?  Either he accessed it only for license plates,

13   or he accessed it for license plates and warrants.  I don't

14   know what it is.

15              MR. SIEGEL:  I think the issue, really the

16   violation is not what the purpose of the access was, but did

17   he in fact access it as not part of his official duties, but

18   for personal reasons.  So whatever reason he had for

19   accessing the database under Count 4, it was not part of his

20   official duty so as a result -- I mean he's acknowledged that

21   he violated the law.

22              So for whatever reason he had for doing it, he's

23   acknowledging that it was not part of his official police

24   business to do it, but it was more or less of a personal

25   nature where it's a personal -- was not connected to his

1      police duties.

2                    MS. DEMAS:  Your Honor, may I be heard?

3                    THE COURT:  Sure.

4                    MS. DEMAS:  My concern now is that we've gone back

5      and forth for about five minutes where the defendant seems

6      not prepared to admit that he ran warrant checks.  That's

7      what the government was prepared to prove at trial.  That's

8      what is charged in Count 4 of the indictment and I'm

9      concerned that by saying that he thought that he was just

10     running license plates, that he's not effectively allocuting

11     to that charge.

12                   So if he does not remember it, I can ask him

13     follow-up questions to establish that he did, in fact, run

14     warrants on those days or at least ask Your Honor to ask him

15     follow-up questions, but I don't really see what the concern

16     is in actually identifying what he did.

17                   I feel like there has not been a sufficient

18     identification of that search.  If all he's allocuted to so

19     far is that he did searches and, you know, on specific dates

20     and that he's so far said that the only searches that he did

21     were in a license plate database.

22                   THE COURT:  Does the type of database that was

23     accessed have any impact on sentencing or anything else?

24                   MS. DEMAS:  No, but it's part of his offense

25     conduct.  I mean, it's running a warrant check at the behest

1    of another individual.  I mean, it's something that's going

2    to come up in the PSR and also -- I mean, perhaps the way to

3    do this is for the defendant to just stipulate that every

4    search that he ran on all of these dates hit the NCIC and

5    that the NCIC is run by the FBI which is an agency of the

6    United States and that would be sufficient.

7              MR. SIEGEL:  And my position is, is that when you

8    look within the four corners of Count 4 which we're

9    addressing, it just says that he knowingly and intentionally

10   accessed a computer without authorization and exceeded his

11   authorized actions through a computer and did thereby obtain

12   information from the FBI, a department agency which is --

13             THE COURT:  Let me ask -- let me ask Mr. Daniels

14   this.  Mr. Daniels, on or about June 4th and June 5th, 2010,

15   did you knowingly and intentionally access a computer in

16   excess of your authority and obtain information from the

17   Federal Bureau of Investigation, a department and agency of

18   the United States?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And you did that from your precinct in

21   Queens?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Is that enough?

24             MS. DEMAS:  Yes, Your Honor.  Unless the defendant

25   could also establish that either from the confines in his

1    precinct in Queens in case it wasn't at the actual precinct.

2    Meaning that these devices are in cars that move.

3                THE COURT:  Oh.  Oh.  I didn't know that.  So you

4    were within Queens, New York when you had this access --

5                THE DEFENDANT:  Yes --

6                THE COURT:  -- on June 4th and 5th?

7                THE DEFENDANT:  Yes, Your Honor.

8                THE COURT:  Whether it's within the precinct

9    confines or anywhere else in the borough, that's enough for

10   venue.  All right.  You think that allocution's sufficient,

11   Mr. Siegel?

12               MR. SIEGEL:  Yes, Your Honor.

13               THE COURT:  All right.  As supplemented, do you

14   think it's sufficient?

15               MS. DEMAS:  Yes, Your Honor.

16               THE COURT:  All right.  So do I.  Based on the

17   information given to me, I find that Mr. Daniels is acting

18   knowingly and intentionally, that he understands the charges

19   pending against him, that he understands the -- his rights,

20   that he understands the consequences of his guilty plea.

21   There is also a factual basis for the plea.

22               Mr. Daniels has admitted to accessing computers

23   beyond his authorization and obtaining information from the

24   FBI on -- from within Queens, New York on or about April

25   17th, 2011,  April 9th, 2011 and June 4th and 5th, 2010.

31

1          It's therefore my recommendation to Judge Amon that

2     she accept his guilty plea to Counts 1, 2 and 4 of the

3     indictment.  Anything else?

4                    MR. SIEGEL:  No.

5                    THE COURT:  Thank you.

6                    MS. DEMAS:  Thank you, Your Honor.

7                    MR. SIEGEL:  Thank you, Your Honor.

8          (Proceedings concluded at 2:54 p.m.)

9       I, CHRISTINE FIORE, court-approved transcriber and

10    certified electronic reporter and transcriber, certify that

11    the foregoing is a correct transcript from the official

12    electronic sound recording of the proceedings in the above-

13    entitled matter.

14

15    *Christine Fiore*

16    _____          June 11, 2013

17       Christine Fiore, CERT

18

19

20

21

22

23

24